UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In re | ) | CHAPTER 11 |
| | ) | |
| 6757 S. EVANS, LLC | ) | CASE NO. 11-12455 |
| | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

**STIPULATION AND FINAL ORDER PURSUANT TO 11 U.S.C. §§ 361, 363 AND 364
AUTHORIZING USE OF BANK OF AMERICA, N.A.'S CASH COLLATERAL
AND GRANTING ADEQUATE PROTECTION**

This matter comes before this Court on the Debtor's motion (the "Motion") seeking the entry of an order (a) authorizing, pursuant to Section 363(c) of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), use of cash and cash equivalents constituting "Cash Collateral" (as that term is defined in Section 363(a) of the Bankruptcy Code) in the ordinary course of business and pursuant to the terms of the Budget (as defined below); and (b) providing adequate protection to, among other parties, Bank of America, N.A. (the "Lender"), as senior secured creditor to certain of the Debtor's real and personal property, including certain Cash Collateral; a final hearing having been held before this Court with respect to the Lender and its Cash Collateral; due and sufficient notice of the Motion and such final hearing under the circumstances having been given; and upon the entire record made at the final hearing, and this Court having found good and sufficient cause appearing therefore

THE DEBTOR AND THE LENDER STIPULATE AS FOLLOWS:

A.    On March 25, 2011 (the "Petition Date"), the Debtor filed its voluntary petition for relief with this Court under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). The Debtor is continuing in possession of its property and operating and managing its business as a Debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

B.  Without prejudice to the rights of any other party (except as set forth in paragraph 19 hereof), the Debtor acknowledges and stipulates that the Lender loaned money to the Debtor pursuant to the terms and conditions of, among other agreements, documents and instruments, the Promissory Note Evidencing a Line of Credit Loan in the principal amount of $70,000 and the Promissory Note in the principal amount of $388,000, each dated November 6, 2003 (collectively referred to herein as the "Loan Agreement").

C.  Without prejudice to the rights of any other party (except as set forth in paragraph 19 hereof), the Debtor acknowledges and stipulates that the Debtor is truly and justly indebted to the Lender, without defense, counterclaim or offset of any kind, and that, as of the Petition Date, the Debtor was liable to the Lender in respect of loans made by the Lender pursuant to the Loan Agreement in the aggregate amount of $342,390.47 (plus interest, fees costs and expenses accrued and unpaid thereon)(collectively, the "Prepetition Indebtedness").

D.  Without prejudice to the rights of any other party (except as set forth in paragraph 19 hereof), the Debtor acknowledges and stipulates that as security for repayment of the Prepetition Indebtedness, the Debtor executed the Real Estate Mortgage, Assignment of Rents, Security Agreement and UCC Fixture Filing dated November 6, 2003 (the "Mortgage" and, together with the Loan Agreement and all other agreements, instruments, financing statements and documents entered into in connection with the Loan Agreement and the Mortgage, the "Prepetition Loan Agreements"), whereby the Debtor granted to the Lender a mortgage in the real property commonly known as 6757-6759 S. Evans, Chicago, Illinois (the "Real Property") and a security interests in, and liens upon, substantially all of the Debtor's assets, both tangible and intangible, in connection with the Real Property, all as more fully described in the Mortgage, which is incorporated herein by reference, including, without limitation, all rents, income,

CH01DOCS\162339.2

revenues and profits derived from the Real Property (collectively, including the Cash Collateral existing as of the Petition Date derived from the Real Property, the "Prepetition Collateral").

E.  Without prejudice to the rights of any other party (except as set forth in paragraph 19 hereof), the Debtor acknowledges and stipulates that the Lender's mortgage, security interests in and liens on the Prepetition Collateral were properly perfected and are valid and enforceable first priority liens on and security interests in the Prepetition Collateral. The Lender is entitled, pursuant to Sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of its interest in the Prepetition Collateral, including for the use of the Cash Collateral derived from the Real Property (collectively referred to herein as "Lender's Cash Collateral"), and the imposition of the automatic stay under Section 362 of the Bankruptcy Code.

F.  Notice of the Final Hearing and the relief requested in the Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the Lender, (iii) the creditors holding the 20 largest claims against the Debtor, and (v) all parties requesting notice in this case.

G.  A need exists for the Debtor to use Lender's Cash Collateral to continue to operate its business and the Debtor has requested authority to do so as specified in the Budget (as defined below) in order to, inter alia, pay management fees and expenses and generally conduct its business affairs, subject to and within the limits imposed by the mutually agreed upon Budget (as defined below) and further subject to the terms and conditions of this Final Order.

H.  The Lender has consented to the Debtor's use of Lender's Cash Collateral conditioned upon the express terms and conditions set forth in this Final Order.

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED AND, AS APPLICABLE, STIPULATED THAT, EFFECTIVE IMMEDIATELY:**

1. The Motion is granted, pursuant to the terms and conditions set forth in this Final Order and any objections thereto that have not previously been withdrawn are overruled. This Final Order is valid immediately and fully effective upon its entry.

2. This Court has jurisdiction over this Chapter 11 Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

3. Subject to the terms and conditions of this Final Order, the Debtor may use Lender's Cash Collateral and shall pay the ordinary and necessary business expenses for the period from June 1, 2011 through and including August 31, 2011 set forth in the budget attached hereto and incorporated herein as Exhibit A (the "Budget"), which has been consented to by the Lender. The Budget reflects, on a line-item basis, anticipated cash receipts and expenditures with respect to the Real Property on a monthly basis, and the Debtor represents that the Budget includes all reasonable, necessary, and foreseeable expenses to be incurred in the ordinary course of business in connection with the operation of the Real Property for the period set forth in the Budget. In no event shall the Debtor use any of Lender's Cash Collateral to pay any items except as set forth in the Budget, or as approved by the Bankruptcy Court after notice to the Lender and a hearing, or as may be consented to in writing by the Lender.

4. Not later than the tenth (10th) day of each month, the Debtor shall provide to the Lender a variance report reflecting, on a line-item basis, the actual cash receipts and disbursements for the preceding month, the dollar variance and the percentage variance (the "Variance Percent") of such actual receipts and disbursements from those reflected in the Budget for such month. Any disbursement by the Debtor other than for such expenses set forth in the Budget within the Variance Percent shall constitute an Event of Default (as defined below) under

CH01DOCS\162339.2

this Final Order unless the Lender consents to such disbursements in writing; provided, however, that the Debtor may make payments in excess of the total budgeted disbursements so long as the Variance Percent of the aggregate of all actual disbursements for each month shall not exceed ten (10%) percent of the budgeted disbursements for that month and shall at no time exceed the actual cash receipts of the Debtor for such month (the "Allowed Variance"). The Adequate Protection Payments, as provided in the Budget (identified in the Budget as "Mortgage (Principal/Interest)"), shall be paid to the Lender in full (with no variance) on the fifth (5th) day of each month (beginning June 5, 2011), and shall be provisionally applied by the Lender to the post-petition payment obligations of the Debtor to the Lender under the Prepetition Loan Agreements.

    5. The Debtor shall permit the Lender, the Lender's agents and any consultants engaged by the Lender full access to examine the corporate, financial and operating records, and to make copies thereof, inspect the assets, properties, operations and affairs of the Debtor, and the Debtor will cooperate with the Lender, its agents and consultants in all respects. All of the foregoing activities shall be conducted during normal business hours, and in such a manner as to create the least disruption of Debtor's operations as is reasonably possible.

    6. The Debtor's right to use Lender's Cash Collateral shall expire on the earlier of (a) the close of business on August 31, 2011, or (b) the occurrence of any event described in paragraph 17 of this Final Order (the "Expiration Date"). In no event shall the Debtor be authorized to use Lender's Cash Collateral except strictly in compliance with the terms and conditions of this Final Order and the Budget.

    7. In providing for the use of Lender's Cash Collateral, the Debtor and the Lender stipulate and agree that:

CH01DOCS\162339.2

(a) consistent with 11 U.S.C. § 506(b), the Lender may continue to charge to the account of the Debtor and to pay in accordance with the Prepetition Loan Agreements all reasonable fees, expenses and other costs owing as of the Petition Date and which may arise in the normal course of the Debtor's business during the Chapter 11 Case with the Replacement Liens (as defined below) to secure such fees, expenses and other costs; and

(b) the Debtor is not aware of and hereby waives any claim, counterclaim, setoff or defense of any kind or nature which would in any way (i) affect the validity, enforceability and non-avoidability of the Prepetition Indebtedness, the Prepetition Loan Agreements, or any of the liens and security interests held by the Lender under the Prepetition Loan Agreements (collectively, the "Prepetition Liens"), or (ii) reduce or affect the obligations of the Debtor and the Guarantor to pay any of the Prepetition Indebtedness.

8. The Lender's obligations under this Final Order are conditioned upon and subject to the delivery to the Lender within seven (7) days after the entry of this Final Order of evidence satisfactory to the Lender that the Collateral (as defined below) is insured for the full replacement value thereof and the Lender is named as loss payee and/or as additional insured on all insurance policies.

9. The Lender is not required to advance to the Debtor any amounts that may be available for lending under the Prepetition Loan Agreements with the Debtor.

10. The Debtor is authorized to provide adequate protection, pursuant to sections 363(c)(2)(A) and 363(e) of the Bankruptcy Code, to Lender pursuant to the terms and

conditions of this Final Order, including, without limitation, the Adequate Protection Payments listed in the Budget.

11.     The Lender is hereby granted, as adequate protection for any diminution in the value of the Prepetition Collateral, and the proceeds thereof, and Lender's Cash Collateral, and the proceeds thereof, a valid, perfected and enforceable first-priority security interest (the "Replacement Liens") in and upon the Prepetition Collateral, and the proceeds thereof, and Lender's Cash Collateral, and the proceeds thereof, which Replacement Liens shall be in addition to the security interests of the Lender in the Prepetition Collateral, and the proceeds thereof, and Lender's Cash Collateral, and the proceeds thereof, in the same order of priority as such security interests existed on the Petition Date (collectively, all of the collateral described in this paragraph, the "Collateral"). The Replacement Liens herein granted are and shall be valid, perfected, enforceable and effective as of the date of the entry of this Final Order without any further action by the Debtor or the Lender and without the necessity of the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents. The use of Lender's Cash Collateral by the Debtor shall further give rise to an obligation of the Debtor to the Lender for repayment of an amount equal to the amount of Lender's Cash Collateral used and shall be secured by the Replacement Liens.

12.     Unless the Lender has provided its prior written consent, there shall not be entered in this Chapter 11 Case any order which authorizes any of the following: (i) the obtaining of credit or the incurrence of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the Collateral and/or entitled to priority administrative status which is equal or senior to the Replacement Liens granted to the Lender herein, unless such credit or issuance of indebtedness provides for payment in full of the Prepetition Indebtedness and any other obligations of the Debtor to the Lender at the closing of

such transaction; or (ii) the enforcement of any claimed security, mortgage, collateral interest or other lien of any person other than the Lender on all or any portion of the Collateral.

13. Unless and until the Prepetition Indebtedness has been repaid in full, the protections afforded to the Lender under this Final Order shall survive the entry of any order confirming a plan of reorganization and the Lender's prepetition liens and Replacement Liens in and to the Collateral shall continue in these proceedings, and the Lender's prepetition liens and Replacement Liens shall maintain their priority as provided by this Final Order until the Prepetition Indebtedness has been repaid in full.

14. The Lender and the Debtor may make non-material modifications or amendments to the Budget or this Final Order, to take effect upon five (5) business days written notice signed by both parties without further order of this Court, and all actions taken pursuant to such modified Budget shall be and hereby are expressly authorized hereunder. The Lender may consent in writing to extend the Expiration Date without a further hearing or order of this Court. If the Lender determines to do so, written notification of such extension shall be provided to all parties in-interest.

15. In consenting to a Budget and by taking any other actions pursuant to this Final Order, or in exercising the rights and remedies as and when permitted pursuant to this Final Order or the Prepetition Loan Agreements, the Lender shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operations or management of the Debtor.

16. The provisions of this Final Order shall remain in full force and effect unless modified or vacated by subsequent order of this Court, or with the consent of the Lender. Any stay, modification, reversal or vacation of this Final Order shall not affect the validity of any obligation of the Debtor to the Lender incurred pursuant to this Final Order. Notwithstanding

CH01DOCS\162339.2

any such stay, modification, reversal or vacation, all use of the Cash Collateral prior to written notice to the Lender of the effective date of any such stay, modification, reversal or vacation, shall be governed in all respects by the provisions hereof and the Lender shall be entitled to all the rights, privileges and benefits, including, without limitation, the Replacement Liens granted herein.

17.     Notwithstanding anything to the contrary in this Final Order, the Debtor's authority to use Lender's Cash Collateral pursuant to this Final Order shall terminate immediately and automatically (the "Termination Date"), (a) upon twenty-four (24) hours of the delivery of written notice to the Debtor by the Lender of any default or Event of Default of any terms and provisions of this Final Order or the Prepetition Loan Agreements; provided, however, that the Lender shall forbear until the Termination Date on the prepetition Events of Default under the Prepetition Loan Agreements; and (b) without notice of any kind upon (i) the Expiration Date, (ii) the conversion of the Chapter 11 Case to a Chapter 7 case or appointment of a trustee or examiner with expanded powers without the consent of the Lender, (iii) the entry of an order granting any other claim superpriority status or a lien equal or superior to the liens granted to the Lender, (iv) the initiation by any person of any lawsuit or adversary proceeding seeking to challenge the validity or priority of (or to subordinate) any of the Lender's liens and security interests on any of the Collateral between now and the Expiration Date, or (v) the use of Lender's Cash Collateral in excess of amounts permitted under this Final Order.  Upon the Termination Date, the Lender shall have the immediate right to seek relief of the automatic stay pursuant to Section 362(a) of the Bankruptcy Code and/or take such other action as permitted under the Bankruptcy Code; provided, however, that the obligations and rights of the Lender and the Debtor with respect to all transactions which have occurred prior to the Termination Date, including, without limitation, the Lender's security in the Collateral and the Debtor's right, after

notice and a hearing, to (i) use Lender's Cash Collateral, (ii) reinstate, or defend against the lifting of, the automatic stay, or (iii) contest the existence of a default or Event of Default, shall remain unimpaired and unaffected by any such termination and shall survive such termination.

18.     In consideration for the continued use of Lender's Cash Collateral, the Debtor on behalf of itself and its successors and assigns (the "Releasors"), but without prejudice to the rights of any statutory committee appointed in this Chapter 11 Case or to the rights of other parties in interest, including any Chapter 7 trustee appointed in this case to assert claims on behalf of the Debtor's estate (subject to paragraph 19 below), shall forever release, discharge and acquit the Lender and its officers, directors, employees, agents, attorneys and predecessors in interest (the "Releasees") of and from any and all claims, demands, damages, liabilities, responsibilities, disputes, remedies, actions, causes of action, indebtedness and obligations, of every type, including, without limitation, any so-called "lender liability" claims or defenses, which arose on or prior to the date this Final Order is entered with respect to the Debtor, the Prepetition Indebtedness, the Collateral, or the Prepetition Loan Agreements, unless applicable law requires otherwise.

19.     The stipulations contained in the recital paragraphs of this Final Order shall be binding upon all parties in interest, including, without limitation, the Debtor and any statutory committee appointed in this Chapter 11 Case (but excluding any subsequently appointed Chapter 7 trustee), unless a party in interest (including any statutory committee appointed in this Chapter 11 Case) has timely filed an adversary proceeding challenging the amount, validity, enforceability, perfection or priority of the Prepetition Indebtedness or the Lender's liens on the Prepetition Collateral in respect thereof, or otherwise asserting any claims or causes of action against the Lender relating to the Prepetition Indebtedness on behalf of the Debtor's estate, no later than the date that is sixty (60) days after the entry of this Final Order,

and this Court enters a final, non-appealable judgment in favor of the plaintiff in any such timely filed adversary proceeding. If no such adversary proceeding or contested matter is properly commenced as of such date, the Prepetition Indebtedness shall constitute an allowed fully secured claim, not subject to subordination or otherwise unavoidable, unless determined otherwise by applicable law. Subject only to the provisions of this Final Order, for all purposes in this Chapter 11 Case, and any subsequent Chapter 7 case, the Lender's liens on the Prepetition Collateral shall be deemed legal, valid, binding, perfected, not subject to defense, counterclaim, offset of any kind, subordination and otherwise unavoidable, and the Lender, the Prepetition Indebtedness and the Lender's liens on the Prepetition Collateral shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtor's estate, including, without limitation, any successor thereto, unless applicable law dictates otherwise (and excluding any subsequently appointed Chapter 7 trustee). If any such adversary proceeding is properly commenced as of such date, the findings contained in the recital paragraphs of this Final Order shall nonetheless remain binding on all parties in interest except to the extent that such findings were expressly challenged in such adversary proceeding.

SO ORDERED, ADJUDGED, DECREED, AND STIPULATED THIS ___

DAY OF _____, 2011.

_____
UNITED STATES BANKRUPTCY JUDGE

**AGREED TO AND CONSENTED TO THIS 31st DAY OF MAY, 2011**

6757 S. EVANS, LLC, AS DEBTOR

By: _____
One of its attorneys

David K. Welch
Crane Heyman Simon Welch & Clar
135 S. LaSalle St, Suite 3705
Chicago, Illinois 60603
(312) 641-6777

BANK OF AMERICA, N.A., AS LENDER

By: _____
One of its attorneys

Ryan O. Lawlor
Bryan Cave LLP
161 North Clark Street Suite 4300
Chicago, Illinois 60601
(312) 602-5000

CH01DOCS\162339.2

# Exhibit A

June 2011

## 6757 S. EVANS, LLC
(BANK OF AMERICA)

|  |  | Monthly Gross Rent |
|---|---|---:|
| #1 | $ | 1,335.00 |
| #2 | $ | 1,381.00 |
| #3 | $ | 1,414.00 |
| #4 | $ | 1,335.00 |
| #5 | $ | 1,363.00 |
| #6 | $ | 500.00 |
| #7 | $ | 750.00 |
| **Total Gross Rent for June:** | $ | **8,078.00** |
| **June Expenses:** | | |
| Property Management Fee & Overhead | $ | 807.80 |
| Property Repairs & Maintenance | $ | 807.80 |
| Section 8 Inspection Fee | $ | - |
| Mortgage (Principal/Interest) | $ | 2,170.24 |
| Landscaping | $ | 60.00 |
| Extermination | $ | 175.00 |
| Alarm Security | $ | - |
| Property Insurance | $ | - |
| Building Registration | $ | - |
| Scavenger | $ | 125.00 |
| Utilities: Electric | $ | 35.44 |
| Utilities: Gas | $ | - |
| Utilities: Water | $ | - |
| Monthly Real Estate Taxes | $ | 613.07 |
| **Total June Expenses:** | $ | **4,794.35** |
| **Net Cash** | $ | **3,283.65** |

DOES NOT INCLUDE DEBT SERVICE AND LEGAL EXPENSES.


EXHIBIT A

July 2011

**6757 S. EVANS, LLC**
(BANK OF AMERICA)

|  | | Monthly Gross Rent |
|---|---|---:|
| #1 | $ | 1,335.00 |
| #2 | $ | 1,381.00 |
| #3 | $ | 1,414.00 |
| #4 | $ | 1,335.00 |
| #5 | $ | 1,363.00 |
| #6 | $ | 500.00 |
| #7 | $ | 750.00 |
| **Total Gross Rent for July:** | $ | **8,078.00** |
| **July Expenses:** | | |
| Property Management Fee & Overhead | $ | 807.80 |
| Property Repairs & Maintenance | $ | 807.80 |
| Section 8 Inspection Fee | $ | 200.00 |
| Section 8 Inspection Repairs | $ | 600.00 |
| Mortgage (Principal/Interest) | $ | 2,170.24 |
| Landscaping | $ | 60.00 |
| Extermination | $ | - |
| Alarm Security | $ | - |
| Property Insurance | $ | 403.20 |
| Building Registration | $ | - |
| Scavenger | $ | 125.00 |
| Utilities: Electric | $ | 35.44 |
| Utilities: Gas | $ | - |
| Utilities: Water | $ | 549.98 |
| Monthly Real Estate Taxes | $ | 613.07 |
| **Total July Expenses:** | $ | **6,372.53** |
| **Net Cash** | $ | **1,705.47** |

DOES NOT INCLUDE DEBT SERVICE AND LEGAL EXPENSES.

## August 2011

**6757 S. EVANS, LLC**
(BANK OF AMERICA)

|  | | Monthly Gross Rent |
|---|---|---:|
| #1 | $ | 1,335.00 |
| #2 | $ | 1,381.00 |
| #3 | $ | 1,414.00 |
| #4 | $ | 1,335.00 |
| #5 | $ | 1,363.00 |
| #6 | $ | 500.00 |
| #7 | $ | 750.00 |
| **Total Gross Rent for August:** | **$** | **8,078.00** |
| **August Expenses:** | | |
| Property Management Fee & Overhead | $ | 807.80 |
| Property Repairs & Maintenance | $ | 807.80 |
| Section 8 Inspection Fee | $ | 200.00 |
| Mortgage (Principal/Interest) | $ | 2,170.24 |
| Landscaping | $ | 60.00 |
| Extermination | $ | 175.00 |
| Alarm Security | $ | - |
| Property Insurance | $ | 134.40 |
| Building Registration | $ | - |
| Scavenger | $ | 125.00 |
| Utilities: Electric | $ | 35.44 |
| Utilities: Gas | $ | - |
| Utilities: Water | $ | - |
| Monthly Real Estate Taxes | $ | 613.07 |
| **Total August Expenses:** | **$** | **5,128.75** |
| **Net Cash** | **$** | **2,949.25** |

**DOES NOT INCLUDE DEBT SERVICE AND LEGAL EXPENSES.**