UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | 11-12455 |
| 6757 S. EVANS, LLC, | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | Honorable Susan Pierson Sonderby |

## FIRST EXTENSION OF AMENDED AND RESTATED FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL

This matter coming to be heard for status on the Final Order Authorizing Use Cash Collateral and for Related Relief (the "**Motion**") filed by 6757 S. Evans, LLC, Debtor and Debtor in Possession herein (the "**Debtor**"); for the entry of an order authorizing the Debtor to use cash collateral pledged to Urban Partnership Bank, successor in interest to Shore Bank, (the "**Bank**") and to give security therefore; due and proper notice of the Motion having been provided; the Bank and the Debtor having agreed to the entry of this Order and a separate Order granting the Bank's Motion to modify the automatic stay and a sale of substantially all of the estate assets; the Court having reviewed the Motion and being otherwise fully advised:

THE DEBTOR AND THE BANK STIPULATE TO THE COURT MAKING THE FOLLOWING FINDINGS:

A.   Petition. On March 25, 2011 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "**Petition**"). Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtor has retained possession of the Debtor's assets and is authorized, as a debtor in possession, to continue the operation and management of the business previously conducted by the Debtor.

B.   Jurisdiction and Venue. The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 157(b) and 1334. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue in this District is proper pursuant to 28 U.S.C. § 1408 and 1409.

C.   Notice. The Notice given by the Debtor of the Motion and the Final Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c).

D.   Debtor's Acknowledgements and Agreements. The Debtor admits, stipulates and agrees that:

(1)   *Prepetition Financing Agreements.* Prior to the commencement of the Petition, the Bank made loans and advances to the Debtor. The loans were evidenced by two (2) valid and enforceable mortgages (the "**Mortgage Agreements**") and various other agreements, instruments and documents, all as may have been amended, modified and/or

1

restated from time to time (the "**Prepetition Documents**");

    (2) *Prepetition Obligations Amount.* As of the Petition Date, the aggregate amount of all loans and other prepetition obligations of the Debtor owed to the Bank is not less than $447,170.25, including, without limitation, principal in the amount of approximately $418,066.71, interest in the amount of $24,890.62, plus all costs, expenses, fees and other charges (collectively, the "**Prepetition Indebtedness**"). The Prepetition Indebtedness constitutes allowed, legal, valid, binding, enforceable and non-avoidable obligations of the Debtor and any and all makers of the various notes, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and the Debtor does not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Prepetition Indebtedness;

    (3) *Prepetition Collateral.* As of the Petition Date, the Prepetition Indebtedness is secured pursuant to the Mortgage Agreements by valid, perfected, enforceable and non-avoidable first priority security interests and mortgages in two (2) properties (the "**Mortgage Properties**"), commonly known as 6420 - 22 S. Cottage Grove Avenue, Chicago, Illinois and 6355 S. Maryland Avenue, Chicago, Illinois. In addition to the Mortgage Properties, the Debtor has granted to the Bank a security interest in all rents, issues, profits, proceeds, and products received therefrom by or on behalf of the Debtor as of the Petition Date (collectively, the "**Prepetition Collateral**").

    F.    The United States Trustee has not appointed an official committee of unsecured creditors in the Debtor's Chapter 11 case as of the date hereof.

    G.    An immediate need exists for the Debtor to utilize the Prepetition Collateral, and all further rents, issues, profits, proceeds, and products received therefrom (the "**Cash Collateral**") (all of which is hereafter collectively described as the "**Collateral**"), which has been pledged to the Bank in order to continue the operation of the Debtor's business. Without such use of the Collateral, the Debtor will not be able to pay its operating expenses. As a result, there would be no reasonable prospect that the Debtor would be able to reorganize successfully in this Chapter 11 case.

    H.    The Bank has indicated a willingness to allow use of its Collateral, but only under the terms and conditions set forth in this Final Order. The Debtor believes that, under the circumstances, the following terms and conditions are a fair and reasonable resolution to the Debtor's request for use of the Collateral.

    I.    Entry of this Order will minimize disruption of the Debtor as a "going concern," will increase the possibilities for a successful reorganization, and is in the best interests of the estate and its creditors.

    J.    The terms for use of the Collateral have been negotiated at arms-length and in "good faith" (within the meaning of section 364(e) of the Bankruptcy Code) by and between the Bank and the Debtor. Accordingly, the Bank, in allowing use of its Collateral pursuant to

this Order, is entitled to the protection described in section 364(e) of the Bankruptcy Code to the extent applicable.

K. As to the use of the Collateral as requested by the Debtor in its Motion, and as authorized and approved hereby pursuant to Bankruptcy Rule 4001(c), no further notice of this matter is necessary or required. The Court being otherwise fully advised in the premises;

IT IS HEREBY ORDERED AND AGREED THAT:

1. The Debtor shall be, and hereby is, authorized to use the Collateral, on the terms set forth herein:

   A. The Debtor may use the Collateral, on a daily basis, up to the level of and only to be used to satisfy those expenses set forth in the Debtor's budget attached hereto as Exhibit A (the "**Budget**").

   B. The Prepetition Documents and the Prepetition Indebtedness are hereby ratified and approved by the Debtor, and shall continue in full force and effect with respect to the Prepetition Indebtedness and Prepetition Collateral provided that all obligations, commitments or agreements of the Bank contained in the Prepetition Documents to provide loans, advances or other financial accommodations to or for the benefit of the Debtor or the Debtor are terminated and ceased as of the Petition Date, except as specifically set forth herein. The Budget is intended to bind the Debtor for the period set forth therein. The Bank has no obligation to allow the Debtor to use the Bank's Collateral and the Bank has no obligation to make any loans to the Debtor. Nothing herein shall require the Bank to make any loans to the Debtor.

2. The parties have stipulated that the liens and security interests granted to the Bank by the Debtor are valid and enforceable and constitute first, paramount, enforceable and valid liens upon and security interests in the Prepetition Collateral.

3. All objections by any party to any claim or defense objecting to or contesting the validity, priority, perfection, or enforceability of the liens granted to the Bank, or the amount of the Prepetition Indebtedness, or seeking any setoff, recoupment, counterclaim, deduction or claim of any kind against the Bank or the Prepetition Indebtedness ("**Indebtedness Objection**"), are hereby waived, discharged and forever released. The Bank shall have an allowed claim in the full amount of the Prepetition Indebtedness without the necessity of filing a proof of claim.

4. In consideration for the use of the Collateral, the Bank shall receive the following (collectively the "**Adequate Protection**"):

   A. To the extent there is a diminution in the value of the Bank's interests in the Prepetition Collateral, but only to the extent of such diminution, the Bank is granted a first priority security interest in all of the Debtor's avoidance actions under Chapter V of the Bankruptcy Code (the "**Avoidance**

3

Actions").

B. The Bank is granted a replacement lien on all of the Debtor's postpetition assets (the "**Postpetition Collateral**"), which replacement liens are valid, binding, enforceable and fully perfected as of the Petition Date without the necessity of the execution, filing or recording by the Debtor or the Bank of security agreements, pledge agreements, financing statements, or other agreements.

C. The Bank is entitled to receive all excess cash derived from the Mortgage Properties.

D. To the fullest extent allowed by 11 U.S.C. § 364(c), any and all amounts due to the Bank arising after the Petition Date shall constitute an administrative expense of the Debtor's estate having priority over any and all other administrative expenses, including administrative expense of the kind specified in 11 U.S.C. § 503(b) or § 507(b), except fees owed to the United States Trustee (the "**Postpetition Indebtedness**").

E. The Bank shall have the right to "credit bid" the allowed amount of the Bank's claims during any sale of the Collateral, including without limitation, any sale occurring pursuant to section 363 of the Bankruptcy Code or included as part of any reorganization plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code.

F. Also as consideration of the Bank's agreement to permit the Debtor to use its Collateral, (i) the Debtor waives all claims against the Bank which may arise or exist under 11 U.S.C. § 506(c), (ii) the Debtor and its estate agree not to contest the Bank's exercise of its rights under § 363(k), and (iii) the Debtor agrees to permit the Bank to declare a default of the Loan and give the Debtor notice of such default, however, the Bank agrees to take no further action against the Debtor as a result of such notice, unless subsequently permitted by separate Court Order.

G. The Bank is hereby granted a fully perfected first and senior security interest in all of the Debtor's bank accounts as additional adequate protection, wherever those accounts are held or maintained, without the need to file any financing statements or pledge agreements.

H. Notwithstanding anything contained herein to the contrary, the Adequate Protection granted herein, including, without limitation, in subsections 4(B), (D) and (G) shall not supersede, have priority over, prejudice or otherwise effect Bank of America, N.A.'s interest in and to, nor shall any of the security interests or replacement liens granted herein attach to or encumber, Bank of America, N.A.'s Cash Collateral or Collateral (as such terms are defined in that certain Stipulation and Final Order Pursuant to 11 U.S.C. §§ 361, 363 and 364 Authorizing use of Bank of America, N.A.'s Cash Collateral

and Granting Adequate Protection entered by this Court on June 2, 2011 [Docket No. 36]).

7. To further evidence the Postpetition Indebtedness, the creation of the Bank's security interests in and the liens upon the Postpetition Collateral and the other terms and conditions of the financing and financial accommodations approved hereby, the Debtor is authorized to (but at the Bank's option need not) execute and deliver to the Bank all such financing statements, notices, schedules, security agreements, mortgages, assignments, consents, agreements, instruments and documents reasonably necessary or required to evidence loans, to consummate the terms and provisions of this Final Order and in form and substance satisfactory to the Bank.

8. The Debtor shall be authorized to use the proceeds of Collateral pursuant to Paragraph 1 (plus up to 10% additional of any amount budgeted per line item) hereof only for payment of such items as are set forth in the Budget. The Budget may be amended and supplemented from time to time only upon agreement by the Bank or further court order. Payment by the Debtor of amounts or expenses other than those specifically set forth in the Budget ("**Unauthorized Payments**") shall constitute cause to (i) terminate this or any subsequently entered Order, and (ii) lift the automatic stay unless the Bank consents to such payment or payments in writing.

9. This Order is further subject to the delivery to the Bank of evidence, satisfactory to the Bank's counsel, that the Prepetition Collateral and the Postpetition Collateral are insured for the full replacement value thereof and the Bank is named as a loss payee on all insurance policies.

10. Agreements by the Bank to allow use of the Collateral pledged to the Bank are subject to the following terms and conditions:

A. Any agreements by the Bank to allow use of its Collateral shall terminate immediately upon the occurrence of any Event of Default that is not cured in accordance with the terms of this Order, entitling Bank, among other things, to terminate this Order upon filing a notice with the Court and the Debtor. For purposes of this Order, an Event of Default shall include any of the following: (i) any "Event of Default" as defined in the Prepetition Documents, (ii) unauthorized or unbudgeted use of the Collateral, (iii) lapse of insurance on any of the Collateral, (iv) appointment of a Trustee, (v) conversion to Chapter 7, (vi) failure to pay any payment due under the terms of this Order on or before the date said payment is due with no grace period allowed, and (vii) breach of any promise, duty, covenant, or requirement contained in this Order.

B. The Bank may, however, in its sole discretion, elect in writing not to terminate the Debtor's authority to use Collateral and may, in its sole discretion, elect to continue to allow use of Collateral. Any such use shall be without prejudice to the Bank's ability to terminate use and shall not constitute any course of dealing obligating the Bank to make financial accommodations of any kind in the future. Upon termination of the Debtor's authority to use

Collateral hereunder, by either party, the Prepetition Indebtedness, including all accrued and accruing interest, costs and expenses, shall then be immediately due and payable and the Bank shall be entitled to: (i) exercise any and all rights and remedies allowed under the Prepetition Documents (including this, or any prior Interim Order), or applicable law; (ii) receive, take possession of, and apply the cash proceeds of the Prepetition and Postpetition Collateral against the Prepetition Indebtedness; and (iii) cease all funding of the Debtor; and the Debtor hereby consents to cease all use of Cash Collateral upon termination; provided, however, that the obligations and rights of the Bank and the Debtor with respect to all transactions which have occurred prior to such termination, including, without limitation, the Debtor's obligation to remit, and the Bank's right to receive, take possession of, and apply cash proceeds, shall remain unimpaired and unaffected by any such termination and shall survive such termination; and provided further, that upon such termination, the Bank shall be deemed to have retained all its rights and remedies as provided pursuant to the Bankruptcy Code.

C. The security interest granted in paragraph 6G is valid, perfected and enforceable.

11. Upon entry of this Order, the security interests and liens granted to the Bank by virtue of this, and all prior orders shall be deemed to continue to be first, valid, enforceable and perfected as against all third parties (without prejudice to any other party appearing in the case) without regard to applicable federal, state or local filing and recording statutes, as of the Petition Date and without further action of any party, including the Bank; provided, however, that the Bank may, but need not, take such steps as it deems desirable and applicable to comply with such statutes, and all financing statements which are filed listing the Debtor as "debtor" and the Bank as "secured party," all mortgages or similar instruments which are filed granting the Bank liens upon and security interests in, real property, and all certificates of title for motor vehicles issued and evidencing liens and security interests in favor of the Bank, shall be deemed to have been filed and the security interests and liens evidenced thereby shall be deemed perfected nunc pro tunc as of the Petition Date.

12. The Debtor shall deliver to the Bank such financial and other information concerning the business and affairs of the Debtor as required pursuant to the Prepetition Documents and as required to determine compliance with any performance covenants (within three (3) days of the conclusion of the periods specified therein) and as the Bank shall request from time to time including: (i) copies of the sales journal or invoice register; (ii) tax payment verification; and (iii) a list of checks issued. The Bank shall be entitled to inspect any books and records at any time at the Debtor's place of business.

13. If it shall become necessary for the Bank, in its sole discretion, to exercise its rights under the Prepetition Documents to effect repayment of any Prepetition Indebtedness or Postpetition Indebtedness or to preserve any of the Prepetition Collateral or Postpetition Collateral, after first giving five (5) days written notice to the Debtor or its counsel of record and the counsel of record for any party in this matter, the Bank shall be entitled to an expedited hearing within two (2) days (or as soon thereafter as the Court's schedule will

6

allow) after such notice is given with respect to the vacation of the automatic stay and for an order authorizing other appropriate relief. The Debtor consents to service of any notice or motion relative to the lifting of the automatic stay upon its counsel, or upon any of its counsel of record. Notwithstanding the foregoing, the Bank shall be entitled to an immediate hearing in the event it alleges fraud or other imminent danger to any of its collateral. The Debtor hereby waives any right to seek: (i) injunctive relief under section 105 of the Bankruptcy Code or other applicable law in connection with or related to the provisions of this Order; (ii) to use the Bank's cash collateral without its consent under section 363(c) of the Bankruptcy Code or otherwise; or (iii) any extension of any time period set forth herein or any modification of any of the provisions of this Order or of any without the prior written consent of the Bank.

14. All secured creditors reflected in public records and of which the Debtor is otherwise aware, the United States Trustee, the twenty largest unsecured creditors and all creditors who have filed a request to receive notice shall be immediately mailed copies of this Order, which mailing shall constitute adequate notice of this Order.

15. This Final Order and the Debtor's authority to use cash collateral shall expire on October 31, 2011. Upon the expiration of this Order, the automatic stay pursuant to section 362 of the Bankruptcy Code shall be automatically lifted, and the Bank may take any action necessary to foreclose on its security interest or take possession of the Collateral, to the extent such Collateral has not been previously liquidated under § 363 of the Bankruptcy Code. The Debtor hereby agrees that, upon the expiration of this Order, the Debtor shall consent to, and hereby waives all objections to, the entry of an order surrendering to the Bank all Collateral, including but not limited to all of the Debtor's real and personal property.

16. If any or all of the provisions of this Order are hereafter modified, vacated, or stayed by subsequent order of this or any other Court, such modification, vacation, or stay shall not affect the validity of: (a) any indebtedness to the Bank incurred pursuant to this Order prior to the effective date of such modification, vacation, or stay; or (b) the validity and enforceability of any security interest or lien or priority authorized hereby with respect to the Prepetition Indebtedness and the Postpetition Indebtedness. Moreover, notwithstanding such modification, vacation, or stay, any advances of funds, guarantees, use of cash collateral or other financial accommodations made pursuant to this Order by the Bank to or for the benefit of the Debtor prior to the effective date of such modification, vacation or stay, shall be governed in all respects by the original provisions of this Order and the Bank shall be entitled to all the rights, privileges, and benefits, including without limitation the security interests, liens and priorities granted herein, with respect to all such advances.

17. To the extent there exists any conflict between the Prepetition Documents and the terms of this or any prior Order, this Order shall govern.

18. Nothing herein contained shall: (i) affect or impair the Bank's right to seek other adequate protection of its interests in the Prepetition Collateral or to seek any other relief available under any section of the Bankruptcy Code, specifically including, but not limited to, the Bank's right to move the Court to terminate the automatic stay in bankruptcy pursuant to 11 U.S.C. § 362; (ii) be deemed to constitute or constitute a commitment by the

7

Bank to finance the Debtor's Chapter 11 case; or (iii) be deemed to constitute a waiver by the Bank of any default by the Debtor under the Prepetition Documents.

19. Failure or delay by the Bank to insist upon strict performance of any one or more provision of this Final Order or to exercise any right, power, or remedy upon default under or breach of this Final Order shall not constitute a waiver of, or preclude the Bank from exercising, any right, power or remedy.

20. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Final Order.

21. This Final Order shall become effective immediately upon its entry.

ACCEPTED AND AGREED TO BY:

6757 S. EVANS, LLC

_____
Andres Schoinik Andrew J. Maxwell
Its: Attorney

*Attorneys for Debtor*

Dated: As of June 2, 2011

DATED: 9-7-11

URBAN PARTNERSHIP BANK

_____

Stahl Cowen Crowley Addis LLC
55 W. Monroe Street, Suite 1200
Chicago, Illinois 60603
Ph. 312.641.0060
Fax: 312.641.6959
*Attorneys for Bank*

Dated: As of June 2, 2011

ENTERED:

_____
Honorable Susan Pierson Sonderby
United States Bankruptcy Judge

**Order Prepared By:**
Scott N. Schreiber
Shelly A. DeRousse
STAHL COWEN CROWLEY ADDIS LLC
55 West Monroe, Suite 1200
Chicago, Illinois 60603

8

SCCA/33225.002/Doc#278

September 2011

## 6757-59 S. EVANS, LLC
(URBAN PARTNERSHIP BANK)

|  | Monthly Gross Rent |
|---|---:|
| **Total Gross Rent for September:** | $ 6,693.00 |
| **September Expenses:** | |
| Property Management Fee & Overhead | $ - |
| Property Repairs & Maintenance | $ 334.65 |
| Section 8 Inspection Related Costs | $ 200.00 |
| Section 8 Inspection Repairs | $ 600.00 |
| Sewer & Drainage Repairs | $ 2,500.00 |
| Tenant Replacement Repairs | $ 1,700.00 |
| Eviction Filing | $ 500.00 |
| Legal Retainer | $ 4,000.00 |
| RE Advertisement | $ 600.00 |
| Sale Publication & Notice Costs | $ 2,424.00 |
| Mortgage (Principal/Interest/Escrow) | $ - |
| Bank Fees - Tenant Returned Checks - If any | $ 60.00 |
| Landscaping | $ 120.00 |
| Extermination | $ - |
| Alarm Security | $ - |
| Property Insurance | $ 223.23 |
| Building Registration | $ - |
| Scavenger | $ - |
| Utilities: Electric | $ 27.94 |
| Utilities: Gas | $ 212.00 |
| Utilities: Water | $ 501.22 |
| Real Estate Taxes | $ - |
| **Total September Expenses:** | $ 14,003.04 |
| **Net Cash** | $ (7,310.04) |

DOES NOT INCLUDE DEBT SERVICE AND LEGAL EXPENSES.


EXHIBIT A

October 2011

## 6757-59 S. EVANS, LLC
(URBAN PARTNERSHIP BANK)

| | Monthly Gross Rent | |
|---|---:|---:|
| **Total Gross Rent for October:** | $ 6,693.00 | |
| **October Expenses:** | | |
|   Property Management Fee & Overhead | $ - | |
|   Property Repairs & Maintenance | $ 334.65 | |
|   Section 8 Inspection Related Costs | $ 200.00 | |
|   Section 8 Inspection Repairs | $ 600.00 | |
|   Tenant Replacement Repairs - If tenant did not leave in September | $ 1,700.00 | |
|   Mortgage (Principal/Interest/Escrow) | $ - | |
|   Sale Costs (Court Reporter, etc) | $ 250.00 | |
|   Eviction Cost | $ 500.00 | |
|   Landscaping | $ 120.00 | |
|   Extermination | $ 240.00 | |
|   Alarm Security | $ - | |
|   Property Insurance | $ 223.23 | |
|   Building Registration | $ - | |
|   Scavenger | $ - | |
|   Utilities: Electric | $ 27.94 | |
|   Utilities: Gas | $ 204.00 | |
|   Utilities: Water | $ - | |
|   Real Estate Taxes | $ - | |
| **Total October Expenses:** | $ 4,399.82 | $ 4,149.82 |
| **Net Cash** | $ 2,293.18 | |

DOES NOT INCLUDE DEBT SERVICE AND LEGAL EXPENSES.